Good morning, Your Honor. My name is Francisco León and I am representing the appellant in this case, Marcos Soto-Mendoza. Mr. Mendoza was tried on an indictment, an eight-count indictment. He was acquitted of two counts and convicted of six counts. And after the conspiracy count, charging him with conspiracy to bring in and transport undocumented aliens for financial gain. The reason is that the verdict form appeared to be internally inconsistent because part of the verdict form said he was convicted of that, found guilty of that, but the second portion of the verdict form indicated that the jury also found that it wasn't done for commercial advantage or financial gain. So the court granted a motion for new trial on that count, the conspiracy count, which ultimately was dismissed on motion by the government. The defendant, however, argued that if that instruction with regard to commercial advantage and financial gain was given to the jury with regard to the other counts and the jury found that there was no financial gain or commercial advantage, then the other counts should be dismissed as well. Can I ask you about that? Do you have a copy of the verdict form in front of you? I saw it this morning. I don't have it in front of me. The interrogatory, as to count one, says we, the jury, find the offense was for the purpose of the defendant's commercial advantage or private financial gain. Correct. He was charged with conspiracy, which implies that there were other people involved. Wouldn't it be possible that the jury could have found that he did it for financial gain but not for his own personal financial gain? It's possible that the jury found that. However, the jury specifically found that this defendant had no commercial advantage or financial gain after hearing all of the evidence. They could have found him guilty for doing it for the commercial or financial gain of others, couldn't they have? I don't believe so because the instructions to the jury were that this defendant, that the jury had to find that as to this defendant, he did that for financial gain. For financial gain, but not necessarily his own financial gain. They could have found that he did it for financial gain, but for somebody else's gain. Well, there's not very much evidence of that because, in fact, most of the witnesses, well, all of the witnesses testified that they never gave any money or agreed to give any money to Mr. Marcos, to Mr. Soto-Mendoza. Testimony by the expert witness that that was what was going on, they get paid when they get to L.A.? Well, I think the jury could have found based on that, yes, but that testimony was also inconsistent with what the agents claimed that the material witnesses said when they were detained. The witnesses said that they were going to Phoenix and, in fact, they claimed that they were going to Los Angeles or something. I'm going to get back to Judge Silverman's question, I guess both my colleagues' questions, that there was testimony they were going to pay when they reached their destination, perhaps to benefit others. Wouldn't that be a consistent read? Well, it's a possibility, but that's just the problem with the verdict form and why we submit that if the jury found that there was no financial gain, that he should have been acquitted of that particular count, actually, because it's an element of the offense, not only that a conspiracy exists, but that the object of the conspiracy also be proven. Well, that's why count one was vacated, right? Yes. Okay. Yes. Is the jury positioned that any time there's an inconsistency among the verdicts or interrogatories go to judiciary, that it has to be set aside? If I understand you, you're correct. Isn't our law clear that you can have inconsistencies in the return of the jury? You can have inconsistent verdicts. However, most of the, and this is specifically reserved, the issue was specifically reserved, we submit, in the Powell case, where they said, okay, if there's an inconsistency between a not guilty verdict and a guilty verdict, then yes, you can have that type of inconsistency and it wouldn't violate due process. But here you have an issue where the jury finds the defendant guilty of that count, but the verdict with regard to that count is inconsistent with the language as to the other. And what case would you rely upon that makes that, that we have to turn it around and send it back? Well, we couldn't find a specific case, Your Honor, but except the language in Powell, which suggests that they didn't really decide. Suggested. Pardon me? Suggested what? That they didn't decide. That they didn't decide what the ruling would be when you had two guilty verdicts that were internally inconsistent. For example... So there is no case. Powell doesn't... So far as I know, there isn't a case specifically on point, Your Honor, and that's why we've asked the court to rule, because in this instance, the jury found... You ask us then to set an exception that we say, generally speaking, there is no exception? I don't think I understand your question, Judge. Well, generally speaking, we allow inconsistencies. We give it to twelve people, the lawyers get things kind of lawyered up, and they come up with an inconsistency, and we don't turn a decision around just because of that inconsistency. You wish us to do so, but you indicate there's no case that supports you on that. Well, Your Honor, there seems to me to be quite a difference between this and the types of cases that we're talking about in the Powell situation. Because in this instance, there's one instruction given to the jury that they have to find financial gain. And on one count, they don't find it. On the other counts, and apparently because there's no... The verdict forms don't contain that clause where they have a choice to find whether or not there's a financial gain or not. But on the one that they did have the choices, they very clearly concluded, apparently unanimously, that there was no financial gain with regard to that particular count. And I submit to the court that the substantive counts, counts two through six, were actually the object of the conspiracy, according to the language. There was two objects to the conspiracy, bringing in undocumented aliens and actually transporting them. Although on the transportation counts, the defendant was also acquitted of those. Those were the two undocumented aliens who were deceased. Let me ask you about the sentencing, if I may, Mr. Leon. What are your gripes with respect to how the guidelines were calculated? With the guidelines? Yeah. Well, first of all, I think Custo Ponce, with regard to obstruction of justice... I'm with you on that one. That case came out after Judge Jorgensen did her thing, so she didn't have the benefit of Custo Ponce. The objection that we have with regard to the enhancement, the 10-level enhancement for a death occurring, is primarily this. The defendant was acquitted of those transportation counts regarding the two people who were deceased. Nonetheless, the court enhanced by 10 levels at the recommendation of the probation office because a death resulted in the commission of the offense. Our contention is this. Based on the Jones case, which was recently decided, it at least suggested that there's got to be a limit to these enhancements when the jury has, in fact, acquitted the defendant, but the court takes it into account anyways. Isn't it possible to be acquitted because it hasn't been proven beyond a reasonable doubt, but it could be established by a preponderance or even by clear and convincing evidence? I think it's got to be by clear and convincing evidence, at least based on the case law by this court. Let's say clear and convincing evidence. Isn't it clear and convincing that these people died in the course of this? I'm sorry, Judge. I said, isn't there clear and convincing evidence that the victims died in the course of their being smuggled into the United States? Yes, but the mere fact that a witness dies I don't think is sufficient to support an enhancement of this nature without what appears to be the requirement for but-for causation. What would they have had to show that they didn't show by clear and convincing evidence to get this enhancement? It would seem to me that they've got to show that he led them through a place that he knew was going to substantially cause harm to them or risk their lives. And it's important, I think, to know as well that when these undocumented aliens were found, Mr. Soto Mendoza was actually in a very poor state himself. He was severely dehydrated and had been out there and subject to exposure as well. So it's not as if this man is, if you will... Well, he may have jeopardized himself as well, but how does that negate the finding? Well, I think it negates it to the extent that the prosecution suggests that if a defendant takes someone out and exposes them to that kind of danger and doesn't try to assist them or help them and or try to allow for them to make provisions for that, all of these people were in the same boat, essentially. And according to his testimony, Mr. Soto Mendoza indicated that he was actually not the guide. It was actually Mr. Uri Estiaga who was the guide. And obviously the jury rejected that claim. But the fact of the matter is that there's a lot of inconsistencies in the statements attributed to Mr. Uri Estiaga, which we have raised as part of our claim on the confrontation issue. There's always inconsistencies. Pardon? There's always inconsistencies in a trial. Can I turn you to another subject? I'd like to have you tell me about this United States versus Castro Ponce, the idea that there's a requirement that there be explicit findings that the false testimony was given that it was false. Yes. And when I read that case, I thought, you know, that's a pretty good point. But then when you put it into context, we've had a long line of cases that have told the jury, told judges to do just the opposite. Starting with the Supreme Court case in 1993, and then a following line of cases that the Ninth Circuit has said that only if there's an objection is this become an issue. Now we have this case here of Castro Ponce that says just the opposite, right? And you're relying on that. Yes. But that case came out in 2014. This case was tried in 2013, a year earlier. Yes. So we look at what the trial judge knew at that time. What did he know in 2013, a year before this case came out? We know that the Supreme Court in 1993 said he's right in what he did. Then we have a series of Ninth Circuit published opinions, 1998, 2000, 204, 207. And even in 2013, we had an unpublished decision, which we usually write when our law is clear, which it was. So now in 2013, when this case was tried, the court had before it a Supreme Court case and one, two, three, four, five Ninth Circuit cases saying that you have to have an objection before it happens. Now you want us to reverse the district court because of a different case, which is completely inconsistent with our prior law and Supreme Court law, that we should revert the district court. I said, that certainly can't be true. Well there have been objections on many previous occasions to the use of this enhancement. And it was done in this case. But it was a direct line up until 2013 of the Supreme Court and the Ninth Circuit. And he follows those cases. And then we have a three-judge panel, which can't overrule those Ninth Circuit cases, and certainly can't overrule the Supreme Court. And then we're going to reverse the judge because he followed the cases. Well, it seemed to me that that just couldn't be the law. The problem is that this case, obviously this case took several years to try and the case law obviously changed. On the other hand, when the defendant... No, it didn't change. It was one rogue case that didn't follow prior Ninth Circuit case law and the Supreme Court. Now we have to balance out what we do with that. But certainly a panel can't overrule the six Ninth Circuit cases and the Supreme Court. I don't think we're asking this court to overrule in this instance. What we're asking the court to do is apply constipation, which is the law in the circuit now. Now. Yes. Not then when the case was tried. Okay. But right, wrong, or otherwise, you get the benefit of it, don't you, if it's decided what your case is in the pipeline? Yes. Even if it's an outlier, even if it's nuts, right? You get the benefit of it, right, wrong, or otherwise. Well, I think you do. Can I, since your time is so short, why are the findings the judge made insufficient? Findings have to be that the falsehoods were willful material if this new case applies and the judge found that your client affirmatively gave unbelievable testimony, denied guiding this group despite all the other witness testimony, particularly the two material witnesses that he did exactly that, why is this inadequate? Because Castro-Ponce says there's got to be specific findings with regard to each element and that it's got to be pretty much equal to perjury. She didn't say it was material, did she? She didn't use the M word, is that right? Correct. Which is the same problem that happened in Castro-Ponce. You could read it if you read English, you understand the judge was saying it was material but the judge there didn't use the word materiality and the court says it's got to be explicit. My question is just, and I just want to give you one last chance. I think Judge Silverman is exactly right in how he's reading it. It's the M word. My question is whether we're just, if this is just going to be form over substance given the findings that were made by the trial court. Do you want to address that? I don't think it's a form over substance. The fact is that any defendant who testifies who's convicted is subject to being found to have obstructed justice simply because he disagrees with what the government theory is. Yes, but in terms of materiality counsel, he's denying that he was the one who guided them into the desert. He was essentially saying that he was a victim too. He was guided. Exactly. So what could be more material than that? Well, Your Honor, if you're going to punish a defendant for attempting to defend himself and testifying inconsistent with what government witnesses do, then you're going to have obstruction of justice anytime a defendant testifies and is found guilty because by definition that's going to be a rejection of that. Well, if that's what we're looking at, if the judge finds that someone gets on the witness stand and lies under oath on a material matter, then so be it, right? Exactly. Okay, now in this case, I grant you she didn't say you lied under, on a material matter. She came close to it, but she didn't actually say precisely what she was supposed to say. Close but no cigar. Right? Yes, Your Honor. That would be our position. Okay. Thank you. Judge, I'd like to rest with regard to the confrontation issues on the briefs because I think they very well set out the argument in that. Thank you. Thank you very much, Mr. Leon. Good morning. Good morning. May it please the Court, my name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. The inconsistent verdict issue I think is, the facts are a little bit peculiar, but the law I think is plain. What we're being told is that there was the inconsistency in this interrogatory with regard to count one, with count one's verdict, but also with all of the substantive counts with regard to whether or not the defendant's intent for personal financial gain was proved. But the bottom line is that Dunn and Powell both say when you have inconsistent verdicts, some guilty, some not guilty, you have what you got. You don't get to go behind that and complain, well, maybe the jury did this or that. So trying to rationalize the verdicts really is not even really appropriate because the Supreme Court has simply said, juries can do that. Sometimes they're lenient, sometimes they're mistaken, sometimes, you know, who knows what they're doing. So was the judge wrong to vacate count one? Honestly, I think so, yes, Your Honor. But regardless of that, the bottom line is that the defendant maybe got an inappropriate benefit out of that, but that certainly doesn't mean you replicate that error by now throwing out the rest of the clear verdicts that, yes, in each of those individual counts two through six, the evidence was sufficient and the jury found beyond a reasonable doubt, yes, it was for personal financial gain. So it's simply inconsistent verdicts, it's classic Dunn-Powell. There is one case that I think came up someplace, Mazener, which is a Ninth Circuit habeas case where they kind of suggested that that footnote to Powell may have some viability, but that was a very different situation. It was clearly inconsistent guilty verdicts where under state law you could not be simultaneously guilty of, I think it was variations on murder, the degrees of murder. So that simply is not this case. We're not talking about inconsistent guilty verdicts. We're talking about whatever the inconsistency amounts to from that interrogatory with the remaining guilty counts. Let me ask you about another, it looks like maybe an inconsistency. He was acquitted of counts seven and eight, right? Yes. Transporting an alien for gain resulting in death. Yes, sir. Comes time for sentencing, he gets a 10-level bump because it resulted in death. How do we rationalize that? Because again, there's a long line of Supreme Court and Ninth Circuit precedent, basically Watts from the Supreme Court and Mercado from this court saying that at sentencing, because the objectives are different and the standard of proof is different, then even acquitted behavior can be used for sentencing purposes. And they attempt to argue- What does it have to be shown by? By a preponderance? By clear and convincing evidence? What does it have to- This being a 10-level, I think it would be clear and convincing because it does have a very substantial effect on the sentence. Our court's been somewhat inconsistent about how many levels it takes to trigger that standard. But in this case, you're agreeing that it would be clear and convincing, sir? Yes, Your Honor. Okay. I think the kind of rule of thumb is above four or if it doubles the sentence. And of course, it's a whole multi-factor analysis really, but- 10 points. That's a lot of points. That's a lot of points. Right. But regardless of the standard, I think the proof is there that people died in the desert. And it was because he led them there. He was constantly saying, oh, just a little bit further, just a little bit further. And most importantly, don't forget about the fact that- kind of a whole separate issue. But there was testimony from each of the material witnesses that he had a cell phone. It wasn't them taking it from him. It was him having a cell phone. And they begged him to call somebody for help. And he said, oh, no, no, no, I'll lose the work. I'll lose the job. I won't, in effect, get the financial gain. Counsel, could you explain something about the instructions on 7 and 8, please? I think you all stipulated that these two individuals died in the desert. Yes. And then we have this instruction. It seems to me that when it told the jury what they had to find to convict on counts 7 and 8, it doesn't include a death. Is that right? I'm sorry. Not in the instruction. Were they separately instructed that that was stipulated to by the government? Or what happened? They were told they had to find these four elements, and one of them, notably absent, is that a death occurred. I don't have the instructions in front of me. I thought at some point they had, in fact, been directed to do that. But at the very least, the verdict forms are- Well, I'm not trying to be sneaky. Here's what it is. The first sentence is, the defendant is charged in count 7 of the indictment with transportation of an illegal alien resulting in death. But then it goes on to say, in order to convict, you have to find the following. And there are four elements, and those don't include finding that a death occurred. So I'm catching you off guard because you don't have this in front of you. Is it correct that the parties stipulated at trial that those two deaths occurred? I can't say that they stipulated to that. There was no real question about it because there was extensive evidence about the recovery of the bodies, the identification of the persons. In fact, in my SER, I gave you the ID documents that were found on them. So there's really no question that deaths occurred and that it was these people. Right. It's just that it goes back to this question about whether there's an inconsistency via count 7 and 8. You see, if they weren't required to make the finding regarding death, it gets to be pretty difficult for us to read between the lines about what the jury was thinking on count 7 and 8. And that's exactly what the Supreme Court has said that it's not appropriate for a reviewing court to try to do. Again, I think it was in the post-trial motion, the trial counsel, the AUSA, tried to find, well, is it the fact that it was transportation in count 7 and 8 as opposed to bringing in and maybe there was some kind of a difference that seemed to be a difference to the jury. But again, Well, there seemed to be a difference on that. Forgive me for interrupting. But there seemed to be a difference in the transcript on that point from government counsel thought there was a significant difference. And I didn't understand the difference at all vis-a-vis the issues in this case. What difference did it make if it was transporting in one count or bringing in? Did that make sense to you? It did not to me. And in a sense, again, that's illustrative of why we have the Dunn-Powell rule. Juries do what they do, and they have the power to do it without telling us why. And so even with count 7 and 8, what do you have? It's classic Dunn-Powell. You have guilty verdicts on some counts, inconsistent, arguably, verdicts on other counts. So that's simply what the jury did, and we have to accept it. Mr. Ferg? Yes, sir. Judge Wallace pointed out that the sentencing in this case occurred in April of 2014 before Judge Jorgensen. And then six months later comes this other case, Castro-Ponce, which says we're now going to make it clear it has to be an explicit finding of materiality. And I'm looking at Judge Jorgensen's transcript, and I don't see where she explicitly said this was material. Am I overlooking it, or is it? She didn't use the magic word. Right. But I think, and I did in a footnote there, somewhere, I kind of set out and summarized the findings, which I also put verbatim in there. And basically what she was saying, obviously this was material, because you, Mr. Sotomendoza, were, she agreed, she accepted the reliability of the material witnesses. So whatever he was saying was totally blame shifting and denial. I don't disagree with you, but how is that any different than what? Because it went to the fundamental elements of the offense that he was charged with, where he was basically denying that he was in any way the perpetrator. He was the victim. And so to claim they took my phone when he had the phone, and claim that he didn't even know all of these people. The consistent testimony from the material witnesses was that they actually started off with a group of almost a dozen people, and they were constantly falling off, leaving behind. And he said, oh, no, there were three different groups. And somehow, these three guys that survived. I get all that. But I can't understand how what Judge Jorgensen did was any different than what Judge Bolton did. Well, let me actually kind of take a step back, because I'm not sure. I did not see anything in Ponce suggesting that the issue of all of these waiver cases, or lack of objection cases, which are well-established law, was ever raised. So I don't know whether that panel overlooked it, or it wasn't raised, or what. But the bottom line is, this court has said, consistent with the Supreme Court's clear language in Dunnegan, that it's only if an objection is raised that those kinds of specific findings need to be made. And so without an objection saying, oh, wait, Your Honor, if they really believed, with or without Ponce, that the findings were insufficient. Because that's clear. You've got to have some kind of findings. But if you said, well, we need magic words of materiality, then she could have done it. And I don't understand what authority Ponce has, at least in a case where we are clearly arguing that prior consistent precedent from this court, which a panel cannot overrule on its own. Well, I'm scratching my head over it, too, for two reasons. I don't quite get how they got there. But now that we're there, I don't see how we can ignore it. Well, that's basically my position. If worse came to worse, wouldn't we be required, I mean, assuming we say that this case right, wrong, or otherwise applies here, we just send it back to Judge Jorgensen and let her make her finding? I mean, that's, at the end of the day, the bottom line of this. That's essentially what it would be. To me, it's judicially non-economic to do that when we have a record where she is very clearly analyzing all the facts and finding basically, Mr. Soderman, there was a lie about everything that he said on the stand, which was clearly material. Would this two-level enhancement, given that he had a 10 and other stuff as well, would that two-level enhancement change the guideline range? Do you know off the top? I couldn't tell you for sure. He wound up at a level 33. I guess what I'm asking is, if he were at a level 31, would it have made any difference? I honestly can't say, because the guideline calculation actually turned out to be at a range higher than the statutory maximum. And so it was a lower guideline, in effect. Maybe I'll ask Mr. Leone if knocking down two levels would make any difference. OK, I'm getting close to the end of my time. With regard to the causation issue, causation, the standard, basically, the defendant tried to raise the Supreme Court Burrage case, and he did argue it in the district court. But I want to suggest to you that this court, I think, has been careful about applying two guideline interpretations of statutes, which don't even have exactly the same language. So that the whole idea of causation is there. But what we have in 2L1.1, which is basically not even referring directly to causation or a standard of causation, is different from the problem in Burrage. But the bottom line is, we actually have a fairly substantial line of cases in the Ninth Circuit, including Miguel, and then there's the unpublished Toledo-Ramos, which is consistent with the Fifth Circuit approach, Ramos-Delgado, which basically says, when we look at this, we find the causation, at least when we're talking about a smuggling, i.e. conspiracy situation, in the jointly undertaken activity standard, which comes from 1B1.3. And if you actually analyze the cases and how they've been applied, it amounts to the same kind of but-for causation that Burrage required. So in a sense, I think that this court presciently understood that this is the way these guidelines should be interpreted. And if anything, it is consistent with Burrage. So whether you technically apply it or not, he was analyzed under the appropriate standard. Thank you, Mr. Furr. Mr. Leone, you've got about two minutes left. Very briefly, with regard to the sentencing guideline where a death occurs, the suggestion by the prosecution is that if a death results, you get this enhancement. It's true that's the way the guideline reads. But in essence, that changes the law then to make it, in effect, felony murder in transportation cases anytime somebody dies. Because there's no requirement, if you accept the government's argument, for a cause of death. Just a death must result as a result of the transportation. And that can be something completely separated  For example, in San Diego, I think they come across, they go across a highway or something like that, a car hits them. Is the defendant then going to be held liable because somebody wasn't able to stop and hit an alien, and therefore the death resulted as a result of that? It seems to me that that is the classic example of the tail shaking the dog. Because the guidelines then become more important than what the statute requires. The statute requires that a death result. The defendant was acquitted of that conduct, notwithstanding that the prosecution argues the guideline allows the judge to take that into account. And it seems to me that that certainly is beyond, and that's exactly what was being addressed by Burrage and some of the other cases, that where you have these guidelines that result in such disproportionate enhancement, that there's got to be clear and convincing evidence that the death resulted as a result, that in this instance, for example, that the death was as a result of the bringing in. And what else would it have been the result of? I'm sorry? What else would it have been the result of? You know, these people, as I say, the defendant's theory was that they were all No, I'm asking you, what else could it be if it wasn't? In this case. In this case, what else could it have been? In this case, it was the fact that they didn't have enough water. They died in the desert, counsel. They died in the desert. And in fact, Mr. Sotomayor almost died in the desert as well. But OK, but as Judge Silverman said, that tells me that he endangered his own life too. But the question is, as to these aliens who are trying to get through the desert, there can't be any legitimate question about what the cause of death was, is there? No, there isn't any dispute that these people died of exposure and dehydration. OK. But the question is whether because this defendant brought them in, and that's what the charge is, is that why they died of that? Well, the testimony at trial was that Or is it because they were lost? The testimony at trial is that they thought they were going to be out in the desert a number of hours. And in fact, they were out there a number of days because they got lost, right? Yes. Right, and the testimony was that he was their guide. Well, but I don't think there's got to be. I grant you that he endangered himself also, but I'm just not sure how that makes any difference in this sentence. Can you help me out with that? Well, the reason I think it makes a difference is because one, you're punishing, you're adding 10 levels to the offense just because the death resulted. There's got to be, as Mr. Lopez argued in the brief, there's got to be something more than just the fact that the death results. There's got to be some kind of causation. There's got to be some kind of relationship between the offense and the death. But what all three of us are struggling with is how is there any doubt about causation here? And so I just want to make sure you have every opportunity to answer that because I appreciate 10 points is a lot of points, but I don't see any question about causation. Literally thousands of people come across the border. They're being smuggled across that never die. Why is it that in this instance, because someone dies, this defendant gets punished with 10 extra levels? Well, because he led them through the desert and caused them to be exposed to the elements and not have enough water. Well, and a lot of other people do as well. Well, that's their problem. We're dealing with this guy. Anyway, I see you're out of time. I think Mr. Wallace had a question. No, no, no. My question was the same as yours. Okay, thank you very much. Mr. Ferg, thank you. Case to start, you just submitted.
judges: Wallace, Silverman, Christen